CHAUNCEY D. HINERMAN

*v.*

MARSHALL COUNTY BANK, *et al.*

(No. 10222)

And

CHAUNCEY D. HINERMAN

*v.*

MARSHALL COUNTY BANK, *et al.*

(No. 10242)

Submitted April 11, 1950. Decided June 6, 1950.

HAYMOND, JUDGE, not participating.

*Chauncey D. Hinerman,* pro se.

*Martin Brown,* Marshall County Bank, etc., and others.

Fox, Judge:

These proceedings are heard together in this Court, and their purpose is to compel the Marshall County Bank and its officials to issue to the relator, Chauncey D. Hinerman, a total of 151 shares of the capital stock of the Marshall County Bank, of the par value of $50.00 per share, which stock is now registered on the books of the bank in the names of Martin Brown and W. Foss Curtis, trustees. The proceeding here on writ of error was instituted in the Circuit Court of Marshall County, and later transferred to the Circuit Court of Ohio County, in which judgment was entered in favor of the relator, with certain conditions attached, by order dated October 7, 1949, to which judgment we granted a writ of error on December 12, 1949. There is involved rights appertaining to 73 shares of stock in the Marshall County Bank as that bank was organized prior to November 5, 1935, the par value of which was $100.00 per share, and formerly owned by one J. M. Sanders. The second proceeding, by which the original jurisdiction of this Court is invoked, involves 43 shares of the same character of stock, formerly owned by Mary K. Crowther, and 35 shares, formerly owned by Mary A. Compton, as to which relator, on October 24, 1949, filed his petition in this Court, and on which a rule in mandamus was awarded returnable January 11, 1950. By reason of an agreed continuance, the proceedings were not submitted until the present term. The questions involved in the two proceedings are identical, and the cases were argued and submitted together.

A proper understanding of the questions involved requires a detailed statement of the history of the Marshall County Bank leading up to the institution of these proceedings. The Marshall County Bank was organized in the year 1881, with a capital stock of $25,000.00. Later, by amendments of its charter, the bank increased its authorized capital stock to $100,000.00, and, in the year 1918, to $150,000.00, represented by 1,500 fully paid-in shares of the par value of $100.00 per share. Due to the depression, which is usually understood as beginning in the year 1929,

said bank became involved in financial difficulties. We need not go into detail as to the steps that were taken in restricting payments to depositors, and otherwise; but, in the month of April, 1933, at the request of the Commissioner of Banking, its affairs were taken over by him for the purposes of endeavoring to rehabilitate the institution and place it upon a sound financial basis, and from that time on the affairs of the bank were in the hands of said Commissioner of Banking. On September 7, 1933, E. A. Rinehart was appointed receiver for said bank, and continued as such, until the 5th day of November, 1935, when the bank was permitted to reclaim its assets in order to carry out a plan of reorganization, which we are led to believe had already been agreed upon, but subject to the approval of the Commissioner of Banking of this State, the Reconstruction Finance Corporation and the Federal Deposit Insurance Corporation, and which plan contemplated securing a loan from the Reconstruction Finance Corporation. The contemplated reorganization of the bank was on the basis of a reduction of the authorized capital stock of said bank to $75,000.00, to be effected by reducing the par value of the 1,500 shares outstanding from $100.00 to $50.00 per share, and an assessment of $50.00 on each new share, par value $50.00, to make up the entire capital stock of the bank as it would be reorganized.

Further details as to the said plan of reorganization, which in its entirety is part of Exhibits Nos. 1 and 6, filed without objection with the answer of the respondents to the petition on which the rule was awarded herein, are as follows: It was provided therein that the Reconstruction Finance Corporation would become interested in providing new capital for the reorganized bank, in the amount of $50,000.00, in the form of interest bearing debentures. No dividends on stock might be declared before the payment of interest on such debentures. A mandatory stock assessment was to be levied under the laws of the State of West Virginia, in the amount of $50.00 per share on each of the 1,500 shares then outstanding; and under the assessment new capital to be raised from old stockholders and friends of the bank in the amounts of $50,000.00 and

$25,000.00, in additional capital likewise to be raised from the same source, or from the trust created pursuant to the plan, by sale to the trustees of stock upon which the assessment was not paid, so that the capital structure of the reorganized bank would be as follows: Debentures in the sum of $50,000.00 to be sold to the Reconstruction Finance Corporation, and capital stock, $75,000.00. It was then provided that upon the reorganization of the bank and reopening for business, sixty-five per cent of all net balances due depositors and creditors at the close of business on May 22, 1933, would be paid in full and made available to such depositors, and entitled to preferred payment; that all unrestricted, segregated, deposits would be made available in full, and all restricted claims of depositors and creditors, which represent the net balances of not more than $5.00, would be made available in full. It was then provided that in the reorganization of the bank, it would retain $50,000.00 cash from the sale of the aforementioned debentures, $75,000.00 in cash to be realized from the assessment or sale of its capital stock, and in addition thereto would retain acceptable assets of the bank being reorganized to an amount equal to the amount of all deposits and other liabilities made available for immediate payment by the bank on completing its reorganization. Following this, it was provided that all remaining assets or interests therein, not retained by the bank, would be transferred to Lula Turner, W. Foss Curtis and Martin Brown, as trustees, in trust, to be liquidated for the benefit of the waiving depositors and creditors of the bank, and that certificates of beneficial interest would be issued to depositors and creditors representing their respective interests in such trusteed assets; and that after the payment in full to said waiving depositors and creditors, the balance of the money or assets in the trust should be transferred to said bank as reorganized for its own use, and that the trustees of the trust, upon a proper accounting, should be discharged from future duties or obligations under said trust. A trust agreement was executed at the time, under which the assets of the bank, not employed in the reorganized institution, and understood to

mean frozen assets of the old bank, were turned over to said trustees for a term of five years, to be used in carrying out the plan of reorganization aforesaid. There is nothing in the record indicating the amount of these assets so turned over to the trustees, or what part thereof have been liquidated, or the disposition thereof, although it is understood and stated that all of the claims of the waiving depositors and creditors have been paid in full under the trust agreement.

After the bank was permitted to reclaim its assets on November 5, 1935, it proceeded to effect a reorganization of its affairs according to the plan outlined above. The par value of the 1,500 shares of the stock in the bank outstanding was reduced from $100.00 to $50.00 per share, and an assessment on each share of $50.00 was made. The owners of 1104 shares of the original $100.00 par value stock voluntarily paid the said assessment, and the owners of 396 of such shares failed or refused to do so. On January 18, 1936, presumably acting under Code, 31-8-14, the said 396 shares were sold by the bank at public auction and purchased by it at the price of $1.00 per share. Such shares were then immediately sold by the bank to Martin Brown, W. Foss Curtis and Lula E. Turner, trustees, at $50.00 per share, thus making up part of the bank's new capital. For reasons which will hereinafter appear, the manner of conducting the said sale is not important to the decision on the validity thereof, and will not be discussed. Subsequent to this sale, the owners of 83 shares of said original stock paid the assessment thereon, and received a corresponding number of the $50.00 par value stock. The said trustees who purchased the 396 shares aforesaid are now registered on the books of the bank as the owners of 313 shares of the new stock.

Among the stockholders, who refused or failed to pay the $50.00 per share assessment aforesaid, were Mary K. Crowther, the owner of 86 shares of the original stock, Mary A. Compton, the owner of 35 shares thereof, and J. M. Sanders, 73 shares. Of said shares, the relator in these proceedings is the present owner of the J. M.

Sanders' 73 shares, 43 of the Mary K. Crowther' shares and the 35 shares formerly owned by Mary A. Compton, which shares have been presented to the reorganized bank with the request that a corresponding number of new shares of the par value of $50.00 be issued to the relator in lieu thereof, without the payment of the assessment made on said new shares.

After the sale of the 396 shares of stock, par value $50.00, aforesaid, to the Marshall County Bank, there was a deficiency in the payment of said assessment of $49.00 for each share. Separate actions at law, by way of notice of motion for judgment, were instituted in the Circuit Court of Marshall County against the Wheeling Dollar Savings & Trust Company, executor of J. M. Sanders, and against Mary K. Crowther and Mary A. Compton for the respective amounts allegedly due from them on account of such deficiency. In said actions, judgments were entered against the defendants for the full amount of such deficiency with interest. Writs of error to the said judgments against Mary K. Crowther and the Trust Company as executor, were granted by this Court, and said judgments were reversed on November 9, 1937. *Marshall County Bank* v. *Wheeling Dollar Savings & Trust Company*, and *Marshall County Bank* v. *Mary K. Crowther*, 119 W. Va. 383, 193 S. E. 915. As we construe the decision in said cases, the assessment so made by the Marshall County Bank on the 1,500 shares of its capital stock, issued in carrying out the plan of reorganization aforesaid, including the 396 shares aforesaid, was held to be void, which necessarily carried with it the holding that the sale made under such assessment was likewise void. The decision in the cases contained an intimation that the cases might be further developed, and they were remanded to the Circuit Court of Marshall County for further proceedings. Upon the remand of the cases, there was a new trial of the *Mary K. Crowther* case, resulting in a directed verdict for the defendant. An application for a writ of error to said judgment was refused by this Court, and certiorari to the Supreme Court of the United States therefrom was de-

nied. Thereupon, the bank dismissed its action against the Wheeling Dollar Savings & Trust Company. In the action against Mary A. Compton, judgment was entered against her for the full amount of the bank's claim on account of such deficiency as to the assessment on her stock. There was no application for writ of error in that case, and the said Mary A. Compton later died insolvent. As indicated above, subsequent to these proceedings, relator became the purchaser of the J. M. Sanders' and Mary A. Compton' shares, and 43 of the 86 shares owned by Mary K. Crowther, the shares purchased by him being shares in the said bank of the par value of $100.00 per share, and not the $50.00 par value shares issued under the reorganization plan, and on which an assessment was made.

In 1941, the Wheeling Dollar Savings & Trust Company, executor of J. M. Sanders, deceased, instituted its suit in the Circuit Court of Marshall County against the Marshall County Bank, as an insolvent institution. This suit was instituted by the plaintiff for itself and for the use of the stockholders of the old bank who held shares of stock of the par value of $100.00 each, as of September, 1933, when the receiver for said bank was appointed, and who did not pay the assessment on the new stock, aforesaid, and was based on the claim that the plaintiff and others similarly situated were entitled to priority as to the trusteed assets of the bank, after waiving depositors and creditors and administrative costs were paid. There was a decree in that case in which the relief prayed for was granted, subject to the provisions therein contained in respect to the distribution of the surplus to be derived from the trusteed assets aforesaid after the payment of waiving depositors and other creditors, and costs of administration, which reads as follows:

"Any part of the surplus property distributable to stockholders of the bank whether heretofore or hereafter made shall be first applied to the reimbursement of those stockholders who have paid all or any part of the assessments mentioned in the bill *pro rata* up to the respective amounts

paid by each of them * * *. If anything shall remain thereafter, or thereafter accrue to the capital fund including payments made and to hereafter be made, by the defendant trustees from trusteed accounts in their hands, it shall be apportioned to the stockholders in proportion to the number of shares owned by them respectively of the stock of the bank as reorganized according to the plan of reorganization, and the number of shares in the hands of the executor shall be qualified to participate in the disbursements to the extent that the number of shares so held by the executor shall be reduced, to the comparable extent, that the shares of other stockholders have been, or may be, reduced in the process of reorganizing the bank, and it is adjudged, ordered and decreed that the defendant bank account to and pay the plaintiff such sums as he may, from time to time, be entitled according to the principles of the formula aforesaid, and as hereinbefore decreed, for the nonperformance of which duty the plaintiff has leave to take appropriate action hereafter."

It will be observed that said suit was not instituted for the purpose of securing the issuance of any stock to the plaintiff, as representative of the estate of J. M. Sanders, but only to obtain for said estate, and others similarly situated, a distribution of the assets in the hands of said trustees, after the obligations of the old bank, which it was contemplated should be paid out of such assets in the hands of such trustees, had been met in full. As indicated above, plaintiff was, in effect, denied the relief prayed for except to the extent of any interest which might develop after the obligations of the old bank had been provided for, and the stockholders who had paid assessments on the new stock had been reimbursed for the amount so paid, to the end that all of the stockholders under the old organization would be placed on exactly the same level with respect to the total assets of the old institution. We have discussed the holding of the court in the equity suit of the Wheeling Dollar Savings & Trust Company as a matter of background, and not because of any binding force of the decision in that case on the questions

here involved. It may be well to say, however, that in that suit there was a clear holding that the assessment and sale of the $50.00 par value shares of stock was void, and the decree entered therein was not appealed from.

We will not overrule, modify, or in anywise disturb, the decision of this Court in the two notices of motion for judgment actions of the *Marshall County Bank* v. *Wheeling Dollar Savings & Trust Co.,* and *Marshall County Bank* v. *Mary K. Crowther, supra,* and we consider ourselves bound thereby. Strictly speaking, the decision in those cases may not be "the law of the case" nor *"res adjudicata",* because, in the first instance, they were different cases from those now before us; and, second, the parties and privies are not the same, and thus not clearly within the principles of *res adjudicata.* However, the questions presented in those cases, so far as the validity of the assessment and sale of the stock is concerned, are identical with those here involved, and must be treated as such, and the holdings made thereon by this Court must be followed, particularly in view of the fact that transfers of stock have been made since the date that decision was written. We must, therefore, proceed upon the premise that there was no legal or valid sale of the 396 shares of new stock sold by the Marshall County Bank and purchased by it, and afterwards sold to the trustees, under the assessment laid under the plan of reorganization adopted. This being true, the owners of the 396 shares of stock who refused to pay such assessment never acquired an interest in the new organization; but in lieu of such an interest which they could have obtained by voluntarily paying their assessment, they retained all rights which had accrued to them as stockholders in the original bank, and a right to participate in any surplus which might develop from the trusteed assets after the payment of the cost of administering the trust, and the amount necessary to pay the waiving depositors and other creditors under the reorganization plan aforesaid.

Applying these principles to relator's claims in these proceedings, we are impelled to the conclusion that at this

time relator stands in exactly the same position as his predecessors in the ownership of the stock here involved stood at the date the said attempted sales of the new shares of stock were made. In other words, he is the owner of the 151 shares of capital stock of the Marshall County Bank, of the par value of $100.00 per share, which gives him the right to participate, in some form, in all of the assets of the Marshall County Bank at the date the said bank reclaimed its assets from the receiver on November 5, 1935. The action of the bank, under the proposed reorganization, in laying the assessment, and in making sale of the stock as aforesaid, has not deprived the relator of any right which his predecessors in title possessed at the date when the receivership ended, and before the reorganization was made. All of this is based on what we understand to be the ruling of this Court that such assessment and sale was void, since the assessment was not made to restore impaired capital of a going concern, or to meet creditor demands after insolvency, but was made to create new capital in a situation where stockholders of the old bank, or new stockholders, were required to furnish new capital for a reorganized institution under its original charter, and required the raising in its entirety of the capital necessary to permit the reorganized bank to be opened as a going institution. This Court held that such an assessment went beyond the contractual obligations of the stockholder of the bank before its reorganization when he subscribed for his shares of stock; that the same could not be enforced; and, necessarily, that the sale made thereunder was void.

There cannot, in our opinion, be any question but that the whole plan of reorganization contemplated an entirely new capital structure for the reorganized institution. We have before us the record in the law action of the *Marshall County Bank* v. *Mary K. Crowther,* and the equity suit of the *Wheeling Dollar Savings & Trust Company* v. *Marshall County Bank,* aforesaid, which are filed without objection with the answer of the respondents herein, as Exhibits Nos. 1 and 6, respectively. From Exhibit No. 1,

aforesaid, we find a statement of the condition of the Marshall County Bank as of November 5, 1935, the date when it was permitted to reclaim its assets from the receiver. At that time the bank was the owner of assets of the book value of $1,152,132.24. Its liabilities to depositors and creditors, including a $71.42 item, referred to as account payable, the residue being deposits, was the sum of $883,985.38. Its capital accounts were made up of capital stock of $150,000.00; surplus, $50,000.00; undivided profits, $60,160.30; and rents received, $7,986.56; making a total of liabilities, including capital, of $1,152,132.24. In this statement, however, the assets of the bank, estimated on the basis of sound value, amount to the sum of $884,-560.39, which, it will be observed, is within less than $1,000.00 of the amount due depositors. It is quite clear, therefore, that there would be neither capital stock, surplus nor undivided profits in existence on that date. Furthermore, we find that after the reorganization of the bank, and its reopening on February 15, 1936, and in its first statement made to the banking commissioner on March 4, 1936, the assets of the bank were stated to be $702,108.16, and the liabilities, including capital, were, of course, the same total, and were composed of capital stock paid in $75,000.00; debentures class A, $50,000.00; undivided profits, $1,709.87; demand deposits, $393,505.89; and time deposits, $181,892.40. It is perfectly clear, therefore, that in the reorganization the amount borrowed from the Reconstruction Finance Corporation, and the proceeds of the $50.00 assessment on the new shares issued, constituted the capital structure of the new organization. All of the other assets of the bank, not included in those reported in the statement of March 4, 1936, necessarily went into the hands of the trustees under the general plan of reorganization and the trust agreement aforesaid.

As indicated above, we are unable to determine the amount of assets of the old organization which went into the hands of the trustees for the benefit of the waiving depositors and other creditors, and, as we think it necessarily follows, for the benefit of the stockholders of the old

organization. Since the reorganization of the bank in 1936, there has been a marked change in the financial setup of the bank. The report of the bank to the commissioner of banking, as of June 30, 1949, which was made only a few days prior to the institution of the first of these proceedings, the assets of the bank are stated to be $1,704,157.70. The liabilities of the bank, not including capital, surplus and undivided profits, was on that date $1,560,875.97. The capital stock on that date was $75,000.00; surplus, $60,-000.00; and undivided profits, $8,281.73; a total net worth of $143,281.73, making the total liabilities and capital accounts balance the assets. This is a rather remarkable achievement, because as it will be readily observed, instead of owing $50,000.00 to the Reconstruction Finance Corporation, on which interest was required to be paid, the bank now has a surplus of $60,000.00, and undivided profits of $8,281.73, so that aside from any amount paid as dividends during the thirteen year period, the gains of the new bank, as a practical matter, amount to approximately $118,281.73. It may be that some of these gains represent money which was paid to the bank out of the trusteed assets, but there is nothing in the record before us upon which we would be justified in making a holding to that effect.

What the relator is seeking to do in these cases is to have issued to him 151 shares of capital stock of the reorganized Marshall County Bank, of the par value of $50.00 per share, and which, according to the latest statement mentioned above, now have a value almost double the par value thereof. He seeks this relief without being willing to make any contribution to the newly organized institution in order to place him on an equality with those who have elected to pay the assessment on such stock made in January, 1936. His first position is that the assessment and sale of the said stock was void as to all parties, including the owners of the shares of stock he now owns as successor in title. But, on the other hand, he is asking to have issued to him shares of stock provided for in the plan of reorganization, based on the assessment aforesaid, which he has repudiated and refused to be bound by. He

will not be permitted to take these inconsistent positions. He must accept the full implication and results of the failure of his predecessors in the ownership of his stock to accept the plan of reorganization and to pay the assessment made thereunder. As this Court has held, the assessment was void and none of the stockholders in the old bank was legally bound to pay the assessment made. However, up to this date, the owners of the 1,187 shares of the 1,500 shares issued have voluntarily elected to pay their assessment and have paid the same. Those who owned the shares of stock, now in the ownership of the relator, could have done the same thing, although they were not required to do so. But, they were not, at the time of their refusal to pay such assessment, entitled to have such stock issued to them without the payment of the assessment, and neither is the relator, as their successor, entitled to have such shares issued to him without the payment of such assessment with proper interest, with due adjustments as to dividends which may have been paid on such stock. Again we say that this does not mean that relator is under any legal obligation to pay the assessment. With the consent of the respondents, and purely as a matter of election and contract, he may do so, and thus be placed upon an equality with the owners of the 1,187 shares who have paid their assessment. To require that said shares be issued to the relator without the payment of the assessment would be to unjustly enrich him at the expense of the other stockholders. There would be no equity in such a procedure, and courts do not sit to impose on the stockholders who paid their assessments the inequitable burden of sharing their investment with someone who has not directly contributed anything to the institution in which they hold their stock. Indirectly the reorganized bank may have profited from a distribution of the trusteed assets, but the record before us does not so show.

The judgment of the Circuit Court of Ohio County, in the proceeding lately pending in that court, apparently attempted to follow, in principle, the decree entered in the case of the *Wheeling Dollar Savings & Trust Company*

v. *Marshall County Bank* and others, mentioned above, in that it awarded a writ of mandamus requiring the issuance to relator of certificates for 73 shares of the $50.00 par value stock here involved, with the condition that he should not be entitled to dividends on such stock until those who have paid the assessment thereon, aforesaid, should have been reimbursed for the full amount of such assessment. It was a laudable attempt to do equity in the matter; but the order is based upon a recognition of the plan of reorganization, and the assessment and sale of stock which assessment and sale this Court has heretofore held to have been void from the beginning. The assessment and sale of the stock, made in January, 1936, cannot be relied upon for anything, because in the eyes of the law there was no sale. The fact that a great majority of the stockholders of the old bank elected to pay an assessment thereunder does not make legal what this Court has declared to be void. Of course, in so electing to pay the assessment, they are now bound by the same even though, in the first instance, they were not required to pay the same. The fact that relator or his predecessors in title did not join in the reorganization plan and could only do so by paying the assessment made thereunder, coupled with the holding of this Court that said sale and assessment was void, requires us to reverse the order of the Circuit Court of Ohio County in awarding the writ of mandamus, even with the condition attached thereto, which would have served to do equity in the case as between relator and other stockholders. It follows that if we reverse the judgment of the Circuit Court of Ohio County in awarding the said writ in the proceeding before it, we must refuse to award the writ in the case wherein the original jurisdiction of this Court is invoked. The order of this Court will be to reverse the judgment of the Circuit Court of Ohio County, and enter an order here denying the writ of mandamus in that proceeding; and in the proceeding before us on original jurisdiction, the writ will be denied.

While relator will be denied the relief he seeks in these proceedings, our order should not be construed as in anywise holding that relator is wholly without rights in the

situation here presented. Of course, we cannot pass upon such rights in these proceedings, even if the facts which might enable us to do so had been fully developed. As we have endeavored to make clear in this opinion, there are two fundamental propositions involved. The first is that the owners of the 396 shares of stock who failed and refused to conform to the new plan of reorganization, and refused to pay the assessment, which such reorganization involved, in proportion to their stock interests, did not deprive themselves of their equitable share of the assets of the Marshall County Bank as it existed at the date its assets were reclaimed, on November 5, 1935, or of their equitable rights in the trusteed assets of what we have called the old bank. The refusal of these shareholders to pay said assessment has been held legally justified by this Court, and certainly that refusal did not in anywise affect their interest in the assets of the institution as it then existed. A part of those assets was used in the reorganization of the bank, and used to pay existing creditors who had waived immediate payment. A part of such assets was turned over to the trustees to be used to pay waiving depositors and other creditors, and thereafter any surplus of such assets was required to be turned over to the newly organized banking institution. Relator, as the owner of a part of said original stock, has not, unless barred by laches or other circumstances of which we have no knowledge, or by the decree in the case of *Wheeling Dollar Savings & Trust Company* v. *Marshall County Bank,* aforesaid, questions we do not decide, lost his right to have paid to him his proportionate share of any surplus in the hands of the said trustees after the payment of the bank's obligations therefrom. Subject to the reservations stated above, he stands in exactly the same position as if there had been a liquidation instead of a reorganization of the bank, and after the payment of all creditors had been made, and there was a fund out of which stockholders could be paid a part or all of the par value of the shares of stock held by them.

The other proposition is that by agreement between the relator and the bank, or the trustees who claim to own

the shares of the new stock acquired by them from the bank, and on which no assessment has been paid by relator's predecessors in title, the relator could obtain the issuance of new shares of stock upon the payment of the assessment with interest, subject to an adjustment of dividends paid on the stock held by the trustees who purchased the same from the reorganized bank, and thus place himself in a situation of exact equality with those who paid the assessment. We do not wish to be understood as limiting the rights of the relator in respect to the stock he owns, but merely to indicate that the proceedings thus far have not affected his right to an equitable share of any surplus derived from the assets of what we call the old Marshall County Bank, as that share was represented by the stock now owned by the relator. No doubt the ascertainment of the value of that share will require a full accounting on the part of the trustees to whom part of the assets of the old bank was transferred. Of course, if relator should pay the assessment by agreement with the bank and the trustees, he would automatically become entitled to an interest in such assets, because in the plan of reorganization, and the trust agreement, it is provided that any surplus in such assets, after the payment of the bank's obligations, would pass into the hands of the reorganized bank.

The judgment of the Circuit Court of Ohio County awarding to relator the writ of mandamus in respect to 73 shares of stock is reversed, and an order will be entered here denying such writ. In the mandamus proceeding, affecting 43 shares and 35 shares, pending in this Court on original jurisdiction, the writ prayed for is denied.

> *In Case No. 10222,*
> *original jurisdiction, writ of*
> *mandamus denied.*
> *In Case No. 10242,*
> *judgment reversed, writ of*
> *mandamus denied.*