IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1011

 Filed: 1 October 2019

Mecklenburg County, No. 14 CVD 13699

RICHARD OWEN SHIREY, Plaintiff,

 v.

STACIE B. SHIREY, Defendant.

 Appeal by plaintiff from order entered 14 March 2018 by Judge Tracy H.

Hewitt in Mecklenburg County District Court. Heard in the Court of Appeals 8

August 2019.

 Thomas Godley & Grimes, PLLC, by Maren Tallent Werts and Seth A. Glazer,
 for plaintiff-appellant.

 No brief for defendant-appellee.

 TYSON, Judge.

 Richard Owen Shirey (“Husband”) appeals from the trial court’s 6 March 2018

order on Stacie B. Shirey’s (“Wife”) motions: (1) for contempt; (2) to enforce/attach;

(3) to modify alimony and child support; (4) for suspension of custody/visitation; and,

(5) for attorney’s fees, and on Husband’s motions: (1) for contempt; and, (2) to modify.

We affirm in part, reverse in part, vacate in part, and remand.

 I. Background
 SHIREY V. SHIREY
 Opinion of the Court

 The Shireys were married on 12 October 2002, separated on 1 February 2014,

and were divorced on 13 May 2016. They are the natural parents of two children, one

deceased minor son and one minor daughter with special needs (“T.S.”), who is also a

subject of this litigation.

 While represented by counsel, the Shireys voluntarily bargained for and

agreed upon a settlement on all issues of alimony, child custody and support, and

equitable distribution, which was reduced to writing, signed by all parties and was

jointly presented to the court and entered as a Consent Order in the Mecklenburg

County Clerk of Superior Court on 24 May 2016.

 Husband agreed to: (1). pay $2,800 per month for T.S.’s child support until

terminated pursuant to North Carolina Law; (2). pay T.S.’s health insurance

premium and 50% of T.S.’s uninsured medical expenses; (3). maintain a life insurance

policy securing his life with a net death benefit of $1,000,000.00 to T.S. as named

beneficiary; (4). pay Wife a total of sixty (60) payments of $1,500.00 per month in

alimony; (5). pay Wife’s health insurance premium for the same five years duration;

and, (6). maintain a life insurance policy on his life with a net benefit of $1,500,000.00

with Wife as named beneficiary.

 The Consent Order also required the Shireys to list the former marital

residence located at 17301 Huntersville Concord Road, Huntersville, N.C.

(“Huntersville Property”) for sale and to split the net sale proceeds; list a marital

Condominium property located at 18829 Vineyard Point Lane, Cornelius, N.C.

 -2-
 SHIREY V. SHIREY
 Opinion of the Court

(“Cornelius Property”) for sale and split the net sale proceeds; and for Husband to pay

debt owed by the Shireys to the Internal Revenue Service (“IRS”) in the amount of

$159,163.83. The Consent Order also addressed the disposition and sale of a resort

property located in Big Pine Key, Florida, which was owned by the Shireys with two

other couples.

 After their separation and divorce, the Shireys remained amicable and were

staying at a hotel in Indian River County, Florida with T.S. for her to attend and

participate in an equestrian event on 27 January 2017. An altercation arose between

them. Wife threw a soft drink in Husband’s face, and then Husband threw a soft

drink in Wife’s face, then purportedly hit her. Husband called police officers, who

observed injuries to Wife and arrested Husband. Wife then obtained a Domestic

Violence Order of Protection (“DVPO”).

 This DVPO restricted Husband from contacting Wife directly. Husband

attempted to send the alimony and child support payments to Wife’s counsel. Wife

refused to accept these payments and filed motions for contempt, to enforce/attach,

to modify alimony and child support, for suspension of custody/visitation, and for

attorney’s fees. Husband later filed motions for contempt and to modify alimony and

child support on 27 April 2017.

 Wife’s motion to modify the Consent Order’s alimony and child support

provisions alleges a substantial change in circumstances based upon the following

facts: (1) Husband selling the business interests distributed to him as separate

 -3-
 SHIREY V. SHIREY
 Opinion of the Court

property in the Consent Order; (2) Husband allegedly having acquired additional

employment and income post-divorce; (3) Husband having voluntarily provided

additional funds beyond his agreed-upon obligations for the benefit of T.S. and Wife

after entry of the Consent Order; (4) the Shireys not selling and agreeing to maintain

ownership of the property in Big Pine Key under a limited liability company, and to

operate it as a rental property; and, (5) the Shireys’ alleged diversion of rental income

from the Big Pine Key property.

 While legally separated and divorce was contemplated and after the Consent

Order had been entered, Husband and Wife purchased a residence as listed tenants

by the entirety located at 25 Park Avenue, Vero Beach, Florida (“Vero Beach

Property”). The parties stipulated Husband contributed $300,000.00 to pay for his

one-half interest, and also contributed an additional $202,000.00 towards the

purchase price of Wife’s share.

 Wife contributed $98,000.00 toward her one-half interest in the Vero Beach

Property. Wife testified she had agreed to the Husband’s request for the Vero Beach

Property to be purchased to provide T.S. “a nice place to live.”

 Wife further testified that no portion of the purchase price contributed by

Husband for her share of the Vero Beach Property was to compensate for amounts

Husband owed pursuant to the Consent Order. Wife asserted Husband wished to

reconcile with her at the Vero Beach Property and wanted them to raise his minor

son, who was born from an extramarital affair.

 -4-
 SHIREY V. SHIREY
 Opinion of the Court

 Husband testified and denied Wife’s assertions. Husband testified the

additional $202,000.00 he paid to purchase Wife’s share of the Vero Beach Property

was to satisfy amounts owed and payable to Wife under the equitable distribution

terms of the Consent Order. Husband also testified to an agreement providing

Husband would advance Wife a portion of her share of the net proceeds from the sale

of the Cornelius Property, and reimburse her for money garnished from her account

by the IRS by bringing those cash amounts to closing for the parties’ purchase of the

Vero Beach Property.

 The trial court concluded Husband remained obligated to Wife for $58,700.70

from the sale proceeds of the Cornelius Property and to pay $129,873.10 to reimburse

her for the IRS garnishment. The trial court denied Wife’s Motion for Contempt, but

found “Husband has failed to comply with the terms of the Permanent Order.

However, he has either purged the contempt[s] or found not to be willful.”

 The trial court also allowed Wife’s Motion for Modification of Child Support

and Alimony. The court found a “substantial change in circumstances impacting the

welfare of the minor child that justifies an indefinite suspension of the child custody

provisions in the permanent order” had occurred since entry of the Consent

Judgment. Sometimes referring to the Consent Order or Judgment as a “Permanent

Order,” the court also concluded the best interests of the child required the custodial

terms of the Consent Order that placed T.S. in the primary physical custody with

 -5-
 SHIREY V. SHIREY
 Opinion of the Court

Wife were to remain intact, but amended the agreed-upon terms to allow the minor

child to dictate the terms of any visitation with Husband.

 Husband was also ordered to pay $58,700.70, representing Wife’s remaining

share of the net proceeds from the sale of the Cornelius Property, $155,632.68

representing Wife’s share of the proceeds from the sale of the Huntersville Property,

$129,873.10 as reimbursement for money garnished from Wife’s account by the IRS,

and pay the debt on the 2014 Ford F-250 pick-up truck in full and to transfer and

deliver title to the vehicle to Wife.

 The trial court also found: “Wife is an interested party acting in good faith with

insufficient means to defray costs and expenses of suit and is entitled to an award of

attorney’s fees.” The trial court granted Wife’s Motion for Attorney’s Fees, holding

“Wife had no choice but to initiate legal action to force Husband’s compliance with

the Permanent Order.” Husband was ordered to pay Wife’s attorney’s fees of

$69,962.90. Husband timely appealed.

 II. Jurisdiction

 This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b) (2017).

 III. Issues

 Husband argues the trial court erred by: (1) finding a substantial change in

circumstances had occurred to warrant a modification of child support and alimony;

(2) concluding both that there had been a substantial change in circumstances

warranting an indefinite suspension of the child visitation provisions in the

 -6-
 SHIREY V. SHIREY
 Opinion of the Court

Permanent Order and that it is in the best interests that the custodial terms in the

consent order remain intact, yet denying Wife’s motion to suspend child custody; (3)

ordering Husband to pay Wife $58,700.70 from the net proceeds of the Cornelius

Property; (4) requiring Husband to pay Wife $129,873.10 to reimburse Wife for the

IRS garnishment; (5) finding the parties did not deviate from the terms of the Consent

Order without the written consent of both parties; (6) ordering Husband to pay off

the debt on the F-250 Ford pick-up; and, (7) awarding Wife attorney’s fees. Wife filed

no brief or arguments on appeal with this Court, after seeking and being granted two

extensions to do so.

 IV. Modification of Child Support and Alimony

 Husband asserts the trial court erred when it found a substantial change in

circumstances had occurred, warranting a modification of the parties’ agreed-upon

terms for child support and alimony in the Consent Order.

 A. Standard of Review

 Generally, the trial court’s decision regarding alimony and child support is:

 left to the sound discretion of the trial judge and will not be
 disturbed on appeal unless there has been a manifest abuse
 of that discretion. When the trial court sits without a jury,
 the standard of review on appeal is whether there was
 competent evidence to support the trial court’s findings of
 fact and whether its conclusions of law were proper in light
 of such facts.

Williamson v. Williamson, 217 N.C. App. 388, 390, 719 S.E.2d 625, 626

 -7-
 SHIREY V. SHIREY
 Opinion of the Court

(2011) (citations and quotation marks omitted).

 A trial court abuses its discretion when it renders a decision that is “manifestly

unsupported by reason or one so arbitrary that it could not have been the result of a

reasoned decision.” Briley v. Farabow, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998)

(citations omitted). The trial court’s conclusions of law are reviewed de novo. Lee v.

Lee, 167 N.C. App. 250, 253, 60 S.E.2d 222, 224 (2004).

 B. Analysis

 The Order states, in relevant parts:

 63. Since the entry of the Permanent Order there has been
 a substantial change in circumstances affecting both the
 welfare of the minor child and her mother which justifies
 the modification of child support and alimony in order to
 maintain their accustomed standard of living. Specifically
 the court finds as follows:

 a) Husband sold his interests in the businesses he
 previously owed with his brother for more than $4 million
 which is paid over a 10-year period in monthly installments
 of $30,000 [twice monthly payments of $15,000.00] as well
 as an additional $100,000.00 lump sum payment made
 annually= $460,000.00/year. This does not include the
 initial buyout payment of $275,000.00 made to Husband in
 April, 2016.

 b) Husband is receiving rental income from one or
 more properties in Florida.

 c) Husband is enjoying income from the new
 businesses he formed after the Permanent Order was
 signed. In fact, he generates additional earnings anywhere
 from $5,000 to $30,000 more per month than what he
 receives from the sale of his business interests.

 -8-
 SHIREY V. SHIREY
 Opinion of the Court

 d) Husband voluntarily provided thousands per
 month (every month until the month Husband was
 arrested for domestic violence) to Wife in excess of the base
 child support and alimony amounts to cover reasonable
 and necessary expenses for the minor child including her
 equestrian activities6 (including ownership of a horse and
 all that it entails) and her attendance at Sun Grove
 Montessori School, a private school which is well suited to
 help ameliorate [T.S]’s longstanding and documented
 special needs and learning disabilities. After the entry of
 the DVPO, Husband stopped paying the tuition and
 expenses related thereto thereby severely affecting the
 welfare of the minor child.

 e)Husband convinced Wife to buy an expensive home
 in Vero Beach with him and then defaulted on the
 remaining indebtedness which sent the home into
 foreclosure.
 _______________________
 6After Wife and the minor child moved to Florida, Husband

 continued paying for the minor child to participate in
 equestrian related activity. The minor child has been
 riding since she was four [4] years old and is now an
 equestrian competition rider. All her life she has been
 encouraged in this endeavor by both parents, as she is
 talented in it and it is beneficial to the minor child because
 of her special needs. It was only on Husband’s guarantee
 that he would maintain the costs associated with the care,
 boarding, and other expenses of the horse, as well as the
 costs associated with the minor child’s continued
 participation in the sport that the minor child would be
 able to continue riding.

 Defendant argues the trial court committed an error of law by concluding a

substantial change in circumstances had occurred to warrant a modification of child

support and alimony. “When the parties have entered into a consent order providing

for the custody and support of their children, any modification of that order must be

 -9-
 SHIREY V. SHIREY
 Opinion of the Court

based upon a showing of a substantial change in circumstances affecting the welfare

of the child.” Woncik v. Woncik, 82 N.C. App 244, 247, 346 S.E.2d 277, 279 (1986)

(emphasis supplied) (citing Harris v. Harris, 56 N.C. App. 122, 286 S.E.2d 859

(1982)).

 A trial court may modify alimony and post-separation support only upon a

“showing of changed circumstances.” N.C. Gen. Stat. § 50-16.9(a) (2017). This Court

has held “[i]t is well established that an increase in child support is improper if based

solely upon the ground that the support payor’s income has increased.” Thomas v.

Thomas, 134 N.C. App. 591, 594, 518 S.E.2d 513, 525 (1999) (emphasis in original).

 In Britt v. Britt, this Court held a trial court’s conclusion of a substantial

change in circumstances related to alimony, that was based solely on a supporting

spouse’s increase in income, was erroneous as a matter of law. Britt v. Britt, 49 N.C.

App. 463, 470, 271 S.E.2d 921, 926 (1980). To properly consider a change in income

by a supporting spouse, the Court is limited to review and determine how that change

in income affects the supporting spouse’s ability to pay. Rowe v. Rowe, 52 N.C. App.

646, 655, 280 S.E.2d 182, 187 (1981), rev’d on other grounds, 305 N.C. 177, 287 S.E.2d

840 (1982).

 1. Sale of Business Assets

 As enumerated and detailed in the Consent Order, Husband held interests in

the following related landscaping companies: 1) Southeast Spreading Company, LLC;

2) Southeast Spreading Asset Management, LLC; 3) Southeast Spreading Logistics,

 - 10 -
 SHIREY V. SHIREY
 Opinion of the Court

LLC; 4) Southeast Spreading Properties, LLC; 5) Southeast Spreading Transport,

LLC; and 6) Southeast Pinestraw, LLC. In the Consent Order, Wife expressly agreed

she “hereby and forever releases, waives, and relinquishes any right title and interest

she may have in and to these businesses.”

 Following the divorce and entry of the Consent Order, the court found Husband

had:

 sold his interests in the businesses he previously owned
 with his brother for more than $4 million which is paid over
 a 10-year period in monthly installments of $30,000.00
 [twice monthly payments of $15,000.00] as well as an
 additional $100,000.00 lump sum payment made annually
 = $460,000.00. This does not include the initial buyout
 payment of $275,000.00 made to Husband in April, 2016.

 The classification of proceeds from the sale of business assets as income is a

conclusion of law, reviewable de novo by this Court. Lee, 167 N.C. App at 253, 60

S.E.2d at 224. The separate assets Husband sold had been released, awarded, and

distributed solely to him by agreement in the Consent Order. Wife had expressly

“relinquish[ed] any right title and interest she may have in and to these businesses.”

 Under the holdings in Greer and Britt, an increase of income alone cannot be

the sole basis to support a conclusion of a substantial change in circumstances. Britt,

49 N.C. App. at 470, 271 S.E.2d at 926. In the absence of fraud or non-disclosure,

modification of the Consent Order regarding alimony or child support cannot be based

upon the change in form of separate assets from tangible to liquid, after they were

released by Wife and distributed solely to Husband.

 - 11 -
 SHIREY V. SHIREY
 Opinion of the Court

 This Court, in McKyer v. McKyer, examined a similar issue in the context of

non-recurring payments, the sale of a marital residence distributed solely to a spouse

with an order that it be sold. McKyer v. McKyer, 179 N.C. App. 132, 143, 662 S.E.2d

828, 834-35 (2006). When wife sold the residence, the conversion of the asset into

cash did not render the cash proceeds received from the sale as income. Id.

 While the analysis in McKyer is pertinent and persuasive, in this case we must

address whether the installment payments from a purchase-money financing sale of

an asset previously released and distributed solely as separate property is considered

as income to the supporting spouse for modification of previously agreed upon

alimony and child support.

 When this Court reviews an issue of first impression, it is appropriate to look

to decisions from other jurisdictions for persuasive guidance. See Skinner v. Preferred

Credit, 172 N.C. App. 407, 413, 616 S.E.2d 676, 680 (2005) (“Because this case

presents an issue of first impression in our courts, we look to other jurisdictions to

review persuasive authority that coincides with North Carolina’s law”), aff’d, 361

N.C. 114, 638 S.E.2d 203 (2006).

 The Appellate Court of Connecticut reviewed an analogous issue in Denley v.

Denley, 661 A.2d 628 (Conn. App. Ct. 1995). In Denley, the husband was solely

awarded stock options in a dissolution decree. Id. at 630. The Connecticut court found

the gain husband had received from the redemption of these stock options could not

be considered income to evaluate whether a change in circumstances had occurred.

 - 12 -
 SHIREY V. SHIREY
 Opinion of the Court

The court held “[t]he mere exchange of an asset awarded as property in a dissolution

decree, for cash, the liquid form of the asset, does not transform the property into

income.” Id. at 631 (citing Simms v. Simms, 593 A.2d 161 (Conn. App. Ct. 1991)).

 Two other jurisdictions agree with the Connecticut court’s holding. See Rimpf

v. Campbell, 853 So. 2d 957, 961 (Ala. Civ. App. 2002) (“the change in the character

of an asset . . . awarded in a divorce judgment does not transform the asset into

income”); Geiger v. Geiger 645 N.E.2d 818, 822 (Ohio Ct. App. 1994) (“The mere

exchange of an asset awarded as property in a dissolution decree, for cash, the liquid

form of the asset, does not transform the property into income.”).

 The reasoning of these decisions and this Court’s holding in McKyer regarding

a similar issue of sale of an asset into liquid proceeds is instructive. The fact that the

purchase price was paid to Husband, either as a lump sum or in an installment sale,

does not convert the payment and receipt of proceeds from sale of a distributed sole

asset into income. In McKyer, the wife sold the former marital residence for more

than the value listed in the equitable distribution order. McKyer, 179 N.C. App. at

143, 662 S.E.2d at 834-35. This Court did not address whether this additional money

was income as apparently neither party raised the issue. Id. However, in this case,

and unlike McKyer, the trial court did not assign values to assets being distributed

according to an equitable distribution order. The record does not show whether

Husband realized profit or whether he received full payment in installments from the

purchase money sale. Additionally, as in McKyer, the only arguments before this

 - 13 -
 SHIREY V. SHIREY
 Opinion of the Court

Court assert the installment payments were not income and do not address any profit

realized from the sale of the businesses. See id. at 144, 632 S.E.2d at 835. Cf. N.C.

Child Support Guidelines at p. 3; N.C.R. Annot. at 53 (2019) (defining “Income” as “a

parent’s actual gross income from any source, including but not limited to income

from employment or self-employment . . . , ownership or operation of a business,

partnership or corporation, . . . capital gains”).

 The trial court here erred by including proceeds from the mere sale of

Husband’s released and separate business assets as increased income and a

purported substantial change of circumstances to support a modification to agreed-

upon alimony and child support without any evidence and finding the sale of the

business assets resulted in actual income to Defendant. Also, an increase of income

alone cannot be the sole basis to support a substantial change in circumstances. Britt,

49 N.C. App. at 470, 271 S.E.2d at 926.

 The incorrect attribution of the installment proceeds from the sale as income

and Husband’s purported increase in income permeates the trial court’s entire

analysis to modify child support and alimony. Moreover, one spouse’s cessation of

voluntary payments in excess of support amounts established by a court order should

not be classified as a substantial change of circumstances, absent a showing of a

change in the reasonable needs of the child or dependent spouse. See, e.g., Gibson v.

Gibson, 24 N.C. App. 520, 523, 211 S.E.2d 522, 524 (1975) (holding that an increase

 - 14 -
 SHIREY V. SHIREY
 Opinion of the Court

in support was properly justified by a showing of increased support costs and

substantially increased spendable income of the payor).

 Here, no finding by the trial court supports any change in the costs of child

support since the parties’ agreed upon amounts of child support in the Consent Order.

The trial court’s findings and conclusions are unsupported as a matter of law. This

portion of the trial court’s order is reversed.

 V. Child Custody Provisions

 Husband argues the trial court erred when it found a substantial change in

circumstances had occurred warranting an indefinite suspension of his child custody

and visitation provisions in the Consent Order, while keeping the custody provisions

intact, after denying Wife’s motion to suspend Husband’s child custody. Husband

asserts the trial court’s Conclusions of Law 12 and 13 directly contradict one another.

 A. Standard of Review

 “When reviewing a trial court’s decision to grant or deny a motion for the

modification of an existing child custody order, the appellate courts must examine

the trial court’s findings of fact to determine whether they are supported by

substantial evidence.” Shipman v. Shipman, 357 N.C. 471, 474, 586 S.E.2d 250, 253

(2003) (citing Pulliam v. Smith, 348 N.C. 616, 625, 501 S.E.2d 898, 903 (1998)).

“Substantial evidence is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion.” Id. (citing State v. Smith, 300 N.C. 71, 78-79,

 - 15 -
 SHIREY V. SHIREY
 Opinion of the Court

265 S.E.2d 164, 169 (1980)). The trial court’s conclusions of law are reviewed de novo.

Lee, 167 N.C. App at 253, 60 S.E.2d at 224.

 B. Analysis

 The trial court’s Conclusions of Law 12 and 13 state:

 12. Pursuant to N.C. Gen. Stat. §50-13.7, [t]here has been
 a substantial change of circumstances impacting the
 welfare of the minor child that justifies an indefinite
 suspension of the child custody provisions in the
 Permanent Order.

 13. It is in the best interests of the minor child that the
 custodial terms provided in the Permanent Order remain
 intact with [T.S.] dictating visitation.

 Contrary to Husband’s argument, these conclusions of law are not in conflict.

Rather, these conclusions of law reflect the trial court’s two-part analysis in

determining whether to modify the custody provisions of the parties’ earlier Consent

Order. Shipman 357 N.C. at 474, 586 S.E.2d at 253 (“If . . . the trial court determines

that there has been a substantial change in circumstances and that the change

affected the welfare of the child, the court must then examine whether a change in

custody is in the child's best interests.”). Here, while the trial court incorrectly

determined there was a substantial change of circumstances affecting the welfare of

the child, the trial court then determined it was nevertheless not in the best interests

of the minor child to modify the Consent Order. Thus, the trial court purported to

decline to modify the prior Consent Order.

 - 16 -
 SHIREY V. SHIREY
 Opinion of the Court

 However, in so doing, the trial court erred in its interpretation of the Consent

Order. In Finding of Fact 79, the trial court “notes that paragraph 2 of the decretal

[in the Consent Order] sets out visitation ‘as the minor child desires.’” In addition,

the trial court ordered: “Defendant/Wife’s Motion to Modify Custody/Suspend

Visitation is DENIED. However, as a result of the custodial provisions as provided

in the [Consent Order], visitation is to be as the minor child desires.”

 This conclusion in the order constitutes an erroneous modification of the prior

Consent Order. The Consent Order does not vest decisions regarding Husband’s

visitation solely within the discretion of the minor child. Rather, the Consent Order

incorporates the parties’ then-existing arrangement and actually provides: “the

minor child will visit upon reasonable advance request to Defendant /Mother, as the

parties agree, and/or as the minor child desires.” (emphasis supplied).

 This provision of the parties’ Consent Order is stated disjunctively and does

not provide the minor child with automatic consent or veto power over Husband’s

visitation; rather, it provides the minor child with the ability to request additional

visitation with her father if she desires in addition to and above the “will visit”

provision. By re-casting this provision as one providing the minor child with sole

discretion over visitation, the trial court erroneously modified child custody. We

vacate this provision of the trial court’s order and remand for entry of an order simply

denying Defendant’s Motion to Modify Custody/Suspend Visitation.

 VI. $202,000.00 Payment

 - 17 -
 SHIREY V. SHIREY
 Opinion of the Court

 A. Standard of Review

 When interpreting consent orders, it is appropriate to consider normal rules

of interpreting or construing contracts.” Fucito v. Francis, 175 N.C. App. 144, 150,

622 S.E.2d 660, 664 (2005) (emphasis in original). What constitutes a “modification”

by “written consent of both parties” is an interpretation of a contract and is a

conclusion of law, reviewable de novo by this Court. See Id.

 B. Argument

 Husband argues the trial court erred by concluding his cash payments of

$202,000.00 to purchase Wife’s share of the Vero Beach Property were not in

satisfaction of amounts he owed under the equitable distribution of the Consent

Order. The trial court’s order did not find or classify the basis for these payments to

ex-Wife, but simply denied Husband any credit for these payments toward his

obligations under the Consent Order.

 The trial court based this conclusion on a provision in the parties’ agreement,

entered as a Consent Order, that states “this consent order, is not subject to

modification absent the written consent of both parties.” The trial court disallowed

modification of the express provisions in the Consent Order by finding and concluding

no “deal was possible without the written consent of both parties.” (emphasis in

original). The trial court found no evidence the parties had agreed in writing that

the additional $202,000.00 payment towards the Vero Beach property modified

Husband’s obligations under the Consent Order as it related to (1) repayment of IRS

 - 18 -
 SHIREY V. SHIREY
 Opinion of the Court

tax debt Husband was obligated to pay and (2) the proceeds from the parties’

Cornelius property.

 1. IRS Lien

 The Consent Order was entered on 24 March 2016, before the divorce decree

was finalized and entered on 13 May 2016. Husband and Wife purchased the Vero

Beach property as tenants by the entirety on 6 May 2016, after the Consent Order

and a week before the divorce decree was entered. As such, the Vero Beach property

is not addressed in the Consent Order. Husband contributed his share to purchase a

one-half interest of $300,000.00, and an additional $202,000.00 towards Wife’s share

of the purchase price. Wife contributed $98,000.00.

 The Shireys purchased the Vero Beach Property as purported tenants by the

entirety on 6 May 2016. Less than a week later on 13 May 2016, the tenancy by the

entirety was terminated by entry of the divorce decree in North Carolina. The

Shireys became tenants in common in the Vero Beach Property, and their equal

ownership percentages in the property remained the same.

 Husband testified the additional $202,000.00 he paid for Wife’s share was to

advance and satisfy amounts he owed under the equitable distribution provisions of

the Consent Order. Specifically, after the parties had entered into their Consent

Order, the IRS garnished $129,873.10 from Wife’s funds. The Consent Order

provided this IRS debt was to be Husband’s obligation. The Consent Order states:

“Plaintiff/Husband agrees to be solely and separately responsible for this

 - 19 -
 SHIREY V. SHIREY
 Opinion of the Court

indebtedness and shall indemnify and hold Defendant/Wife harmless from any

liability she may have thereon (including any attorneys’ fees spent to enforce this

indemnification provision).” Wife’s own testimony in this case, agreeing that she “had

to put in less money to purchase the Vero house because of the IRS withdrawal,”

shows that as a result of this garnishment and other expenses, Wife lacked the funds

to pay her portion of the Vero Beach Property purchase price. Instead, Husband paid

an additional $202,000.00 on her behalf in order to make up in part for the

garnishment.

 The trial court found that in the absence of a written modification to the

Consent Order agreement that Husband’s additional $202,000.00 payment toward

the Vero Beach property did not absolve him of having to reimburse Wife an

additional $129,873.10. Contrary to the trial court’s characterization, Husband’s

additional payment towards the Vero Beach house was not a modification of the

parties’ Consent Order, but rather was the effectuation of the terms of the Consent

Order. We reverse the provisions of the trial court’s Order requiring Husband to

make an additional $129,873.10 payment to Wife as reimbursement for the amounts

garnished from her to satisfy the IRS tax debt.

 2. Cornelius Property

 Husband further contends he should be entitled to a credit from the proceeds

from the sale of the Cornelius property resulting from his additional $202,000.00

payment towards Wife’s interest in the Vero Beach property. As noted, the Shireys

 - 20 -
 SHIREY V. SHIREY
 Opinion of the Court

closed the purchase of the Vero Beach property on 6 May 2016. The Cornelius

Property was under contract and closed on 18 August 2016. In the Consent Order,

Husband and Wife had agreed to sell and divide the net sale proceeds from the

Cornelius Property. The net proceeds from the sale of the Cornelius Property were

$157,401.39, with Husband’s and Wife’s one-half share each representing $78,700.70.

A copy of the closing statement signed by both parties is included in the record on

appeal. It is also undisputed Wife received $20,000.00 cash from the sale of the

Cornelius Property after closing.

The trial court disallowed modification of the express provisions in the Consent Order

again by finding no “deal was possible without the written consent of both parties.”

(emphasis original). In light of our decision that Husband’s $202,000.00 payment

was, at least in part, reimbursement to Wife for the IRS tax debt under the Consent

Order, we also find it necessary to vacate the provisions of the trial court’s Order

requiring Husband to pay Wife $58,700.00 from the proceeds of the Cornelius

property sale. We remand the matter for the trial court to determine whether

Husband is entitled to any credit toward the additional $58,700.70 he owes (after the

$20,000 actually paid to Wife) resulting from the additional $202,000 he paid toward

Wife’s interest in the Vero Beach Property.

 VII. Big Pine Key Property

 Husband argues the trial court erred in finding that the parties agreed to

modify the Consent Order by co-owning the Big Pine Key property, while

 - 21 -
 SHIREY V. SHIREY
 Opinion of the Court

simultaneously finding that no agreement to deviate from the order was possible

without written consent of both parties.

 A. Analysis

 In light of our holding that Wife’s signed agreements to sell the Cornelius and

Huntersville properties serve as a modification of the Consent Order with the written

consent of both parties, we address the status of the Big Pine Key property as it also

relates to the modification of the Consent Order. The Consent Order provides:

 4) Big Pine Key Property. The parties are the part owners
 of real property located in the Florida Keys, more
 specifically: 225 West Cahill Court, Big Pine Key, Florida
 [hereinafter the “Big Pine Key Property”]. This property is
 owned with 2 other couples. Neither party resides in the
 Big Pine Key Property and it is currently listed for sale at
 the listing price of Four Hundred Seventy-Five Thousand
 Dollars ($475,000). Until the sale of the property,
 Plaintiff/Husband shall be responsible for maintaining
 payments for the taxes, insurance and any other expenses
 related to the parties’ ownership share in the Big Pine Key
 Property.

 After the Big Pine Key Property has been sold and the
 expenses of sale are paid, which shall include the mortgage
 (principal and interest), appraisals, inspections, sales
 commissions, prorated and ad valorem taxes, revenue
 stamps, and other routine closing costs Plaintiff/Husband
 shall pay Defendant/Wife a one-time cash distribution of
 Fifty Thousand Dollars ($50,000) for her share of this
 property, within thirty (30) days of closing.

 However, notwithstanding the foregoing, in the event that
 the debt payments to be paid by Plaintiff/Husband as part
 of equitable distribution and pursuant to this Consent
 Order have not been satisfied in full, the parties agree that
 Plaintiff/Husband’s share of the net proceeds shall be used

 - 22 -
 SHIREY V. SHIREY
 Opinion of the Court

 to pay down any and all outstanding debts which have not
 been timely paid pursuant to the express terms of this
 Consent Order.

 The trial court’s Finding of Fact 10 provides:

 10. In May 2016, Husband decided to take the house he
 owned with Wife and four other family members in Big
 Pine Key (i.e. 255 Cahill Court W. Big Pine Key,
 Florida)(“Big Pine Key House”) off the market. He asked
 Wife to remain as co-owner of the home and to operate it
 with him as a rental property. She agreed. Husband
 secured transfers of ownership from his other family
 members and now Husband and Wife are the only two
 persons remaining on the deed.

 After the parties reached agreement on equitable distribution and the Consent

Order was entered, the parties mutually agreed in writing to modify its terms, formed

a Florida Limited Liability Company (“LLC”) on 16 April 2016, bought out the other

couples’ ownership and transferred ownership of the property into the LLC.

 The trial court received into evidence the Operating Agreement for the LLC and

bank information concerning the management and operation of the property. At the

time of the hearing, the Shireys owned and operated this property under a Florida

LLC, Shirey Properties, LLC. In addition, their acts of forming of the LLC, transfer

of ownership, and co-owning and operating the Big Pine Key House in an LLC, that

is owned by both parties was not in dispute.

 The Consent Order states the property was listed for sale and was owned by the

Shireys and two other couples. It is clear the parties had mutually agreed in writing

to modify the terms of the Consent Order requiring sale of this property, and

 - 23 -
 SHIREY V. SHIREY
 Opinion of the Court

implemented that modification. The trial court acknowledged the post-divorce

change of ownership of the Big Pine Key Property from the terms of equitable

distribution in the Consent Order was not a part of this action.

 The Big Pine Key Property provisions of the Consent Order were modified and

satisfied and are no longer subject to the sale or distribution provisions of that order

or to North Carolina’s jurisdiction. Husband’s and Wife’s ownership, rights and

liabilities to the property now owned by the Shirey Properties, LLC, are subject to

Florida laws and jurisdiction. Any claims concerning use of funds purportedly

belonging to this entity by either party are also subject to Florida law. As we have

held the parties modified the terms of the Consent Order by written agreement on

other assets, this provision of the Consent Order is satisfied. Husband’s arguments

on this issue are moot and dismissed.

 VIII. Ford F-250 Pick-Up Truck

 Husband argues the trial court erred in concluding he had failed to pay off the

debt on the Ford pick-up, after wife failed to provide the required payoff information

to the closing attorney.

 The Consent Order provides:

 1) 2014 Ford F250 Super Duty Truck. Defendant/Wife
 currently drives a 2014 Ford F250 Super Duty Truck which
 is titled in Plaintiff/Husband’s name [hereinafter “Ford
 F250”]. The Ford F250 is encumbered by a loan in favor of
 Ford Motor Company. Plaintiff/Husband agrees to pay off
 the current indebtedness securing the 2014 Ford F250
 Super Duty Truck in full and, until said payoff occurs,

 - 24 -
 SHIREY V. SHIREY
 Opinion of the Court

 Defendant/Husband shall be responsible for making the
 monthly loan payments. Defendant/Wife shall be
 responsible for all expenses of ownership of said, including
 vehicle, insurance, taxes, registration, maintenance,
 repairs and the like, and shall indemnify and hold
 Plaintiff/Husband harmless from any liability he may have
 thereon. If the loan is not paid in full and any of the real
 properties provided in Paragraph 16 (a)(1)-(4) above sell,
 then Plaintiff/Husband will pay off this loan in full using
 his share of the net proceeds from said sale.
 Defendant/Wife shall provide the payoff information to the
 closing attorney who shall cause the loan to be paid off
 directly from Plaintiff/Husband’s closing proceeds.

 Once the loan has been paid in full Plaintiff/Husband shall
 sign the title over into Defendant/Wife’s sole name. The
 Ford F250 shall thereafter be the sole and separate
 property of Defendant/Wife, free of all claims of
 Plaintiff/Husband, marital or otherwise. Defendant/Wife
 shall be solely responsible for all expenses of ownership of
 said vehicle, including liens, insurance, taxes, registration,
 maintenance, repairs and the like, and shall indemnify and
 hold Defendant/Husband harmless from any liability he
 may have thereon.

 It is undisputed that Wife failed to provide the payoff information to the closing

attorney when the Huntersville and Cornelius properties were sold as she had agreed

and was ordered by the Consent Order. Her failure to comply was considered by the

trial court when it found Husband was not in willful violation of the Consent Order.

Wife’s failure did not absolve or release Husband from his agreed-upon obligations to

pay off this debt in the Consent Order. Husband has not provided any argument or

authority to relieve him from this obligation. In the absence of any authority, he

 - 25 -
 SHIREY V. SHIREY
 Opinion of the Court

remains bound by the terms of the Consent Order. See N.C. R. App. P. 28. Husband’s

argument is dismissed.

 IX. Proceeds from Huntersville Property

 The parties agreed in the Consent Order:

 1) 17301 Huntersville Concord Road, Huntersville, NC
 28078. The parties are the owners of real property located
 at 17301 Huntersville Concord Road, Huntersville, NC
 28078 which is the former marital residence [hereinafter
 the “Residence”]. Neither party currently resides in the
 Residence and it is currently listed for sale at the listing
 price of One Million Eight Hundred Thousand Dollars
 ($1,800,000.00). Plaintiff/Husband shall bring all
 mortgage payments secured by the Residence current
 within thirty (30) days of the entry of this Consent Order.
 Neither party shall cause any further indebtedness to be
 secured by the property.

 The Residence shall remain on the market to be sold until
 such time as it is sold. Plaintiff/Husband shall be solely
 and separately responsible for maintaining the mortgage
 payments, ad valorem taxes, homeowner’s insurance and
 all other expenses related to the property. He will not allow
 these expenses to go in arrears thereby resulting in a
 reduction in net sales proceeds (as defined below) upon
 sale. In addition, Plaintiff/Husband agrees to assume the
 cost of an ensure the repairs and upgrades that have been
 started on the property are completed in a timely manner
 so as not to hinder any potential sale of the property and
 he shall pay all of the cost to complete any such projects.

 The parties agree to cooperate in all respects to sell the
 Residence including lowering the price in reasonable
 increments and making sure the Residence in saleable
 condition at all showings (sic). The parties shall be
 obligated to take any offer within 10% of the initial listing
 price. In the event that the Residence is not sold in ninety
 (90) days from the entry of this Order, the initial listing

 - 26 -
 SHIREY V. SHIREY
 Opinion of the Court

 price shall be reduced by the amount suggested by the
 realtor.

 At closing on the sale of the Residence and the expenses of
 sale are paid, which shall include the mortgage (principal
 and interest), appraisals, inspections, sales commissions,
 prorated and ad valorem taxes, revenue stamps, and other
 routine closing costs the net balance, constituting the “net
 sales proceeds,” shall be divided equally between the
 parties.

 There are some large items of furniture located in the
 residence in which the parties hope to sell with the
 Residence. In the event that a potential buyer does not
 wish to purchase this furniture, the parties agree to divide
 the remainder between them.

The trial court found:

 That the real property located at 17301 Huntersville
 Concord Road, Huntersville, NC 28078 be sold. Pending
 the sale of this property, Husband is required to pay ALL
 (1) mortgage payments; (2) ad valorem taxes (sic); (3)
 homeowner’s insurance and (4) all other expenses related
 to the property, [including maintenance and repairs
 related to the listing for sale. Husband was forbidden from
 allowing the house mortgage to fall into arrears or to allow
 the house to fall into disrepair. Per the Order, upon the
 sale of the property, the proceeds were to be divided equally
 between the parties. However, notwithstanding the
 foregoing, in the event that debt payments to be paid by
 Husband pursuant to this Order have not been satisfied in
 full, Husband’s share of the net proceeds will be used to pay
 same.

 The net sale proceeds of the Huntersville Property totaled $295,321.68. To this

amount, the trial court found and added: Husband had retained the buyer’s deposit

of $500.00, should have paid the July 2016 mortgage of $7,809.27, and the ad valorem

 - 27 -
 SHIREY V. SHIREY
 Opinion of the Court

taxes of $7,634.41 to equal $311,265.36. Husband does not challenge these

calculations and adjustments to his obligations under the Consent Order.

 From these adjusted net proceeds of $311,265.36, Wife is due $155,632.38.

Husband is due the balance of the net sale proceeds, $139,689.30. It is undisputed

the parties signed the settlement and closing statement for this property to be sold.

The net sale proceeds, if still held in trust by the closing attorney from the sale of the

Huntersville property, are to be distributed to both Husband and Wife, consistently

with the Consent Order with the amounts as adjusted above by the trial court and

unchallenged by the parties.

 X. Award of Attorney’s Fees

 Husband asserts the trial court abused its discretion when it awarded Wife

attorney’s fees related to contempt, while not finding Husband in contempt. In light

of this Court’s holdings to reverse and remand for further proceedings, the trial

court’s award of attorney’s fees is vacated and remanded.

 XI. Conclusion

 We affirm the trial court’s conclusion ordering Husband to pay off the Ford

pick-up. The trial court’s refusal to address the Big Pine Key Property’s change of

ownership and any disputes over the funds belonging to that ownership entity is

moot.

 We reverse the trial court’s finding a substantial change in circumstances had

occurred to warrant a modification of child support and alimony by calculating income

 - 28 -
 SHIREY V. SHIREY
 Opinion of the Court

derived from the sale of Husband’s separate property in the Consent Order and

increased income earned post-divorce. We also reverse the trial court’s modification

of the child custody provisions in the Consent Order leaving Wife’s custodial terms in

the Consent Order intact, while only allowing Husband’s parental visitation as his

minor daughter “desires.” On remand, the trial court shall deny Wife’s Motion to

Modify Custody.

 We vacate the trial court’s order for Husband to further pay Wife $58,700.70

from the proceeds of the Cornelius property and remand for further consideration.

We reverse the trial court’s requirement Husband pay $129,873.10 to reimburse Wife

for the IRS garnishment. We also vacate the award of Wife’s attorney’s fees.

 These portions of the trial court’s order are reversed or vacated as noted and

remanded for entry of order consistent herewith. The net sale proceeds from the sale

of the Huntersville Property, as adjusted by the trial court’s 6 March 2018 order and

unchallenged by Husband, are to be distributed by the closing attorney to Husband

and Wife per the terms of the Consent Order. It is so ordered.

 AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; AND

REMANDED.

 Judges INMAN and HAMPSON concur

 - 29 -